No. 86-287

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

IN THE MATTER OF
W.J.H., a youth.

_____

APPEAL FROM:   The District Court of the Twelfth Judicial District,
               In and for the County of Hill,
               The Honorable B.W. Thomas, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Bosch, Kuhr, Dugdale, Warner, Martin & Kaze; John
        Warner argued, Havre, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        John Paulson, Asst. Atty. General, Helena
        David G. Rice argued, County Attorney, Havre, Montana
        Leslie C. Taylor argued, Dept. of SRS, Helena, Montana

    For Amicus Curiae:

        Richard P. Bartos argued, Office of Public Instruction,
        Helena, Montana
        Bruce W. Moerer argued, School Boards Assoc., Helena,
        Montana

_____

                         Submitted:  February 10, 1987

                           Decided:  April 30, 1987

Filed:    APR 30 1987

_____
                  Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal arises from an order entered by the District Court of the Twelfth Judicial District in and for Hill County. The District Court, acting as a Youth Court, ordered a youth's high school district to pay a segment of the daily cost associated with the placement of the Youth in an out-of-state program. The School District appeals. We reverse.

On August 14, 1985, the Hill County Youth Court committed W.J.H. (hereinafter Youth) to the Hennepin County Sexual Offenders Program located in Minnetonka, Minnesota. The court committed the Youth for a period of 180 days subject to further commitment at the court's discretion. At the time of his commitment, the Youth was seventeen years of age and was a resident of Hill County School District No. 16A (School District).

As of the date of the Youth's commitment, the Minnesota program charged $145 per day per person. In its commitment order, the Youth Court ordered that the bulk of these charges be shared by Hill County and the Department of Social and Rehabilitation Services (SRS). However, because this program designated $48 of the daily charges as education costs, the Youth Court ordered that that part of this daily expense be paid by the School District.

The School District received no notice of and did not attend the hearing which resulted in the August 14 order. Upon learning of the order the School District filed a petition with the Youth Court to vacate that portion of the order requiring it to pay the daily $48 education expense. The Youth Court stayed that portion of its order during the pendency of this action.

On February 10, 1986, the Youth Court issued an order extending the Youth's commitment in the Minnesota program. Again the School District received no prior notice of and did not participate in the hearing.

On April 3, 1986, the Youth Court formally held a hearing on the School District's responsibility to pay the program's education expenses. In its order issued April 14, 1986, the Youth Court noted that it had placed this Youth in the Minnesota program pursuant to the Interstate Compact for the Placement of Children, § 41-4-101, MCA. Pursuant to this Interstate Compact, the Youth Court designated Hill County as the "sending agency" which rendered the County primarily responsible for the support and maintenance of the Youth during the period of placement. However, the Youth Court held that other agencies were legally responsible for payment of a share of those costs and that it had the authority to identify and designate those other agencies. Exercising this authority, the court then held the School District legally responsible for the education expenses associated with the placement of this Youth.

The sole issue raised on appeal is whether the Youth Court erred in holding the School District legally responsible for payment of the education costs associated with the placement of this Youth.

The School District raises several allegations of error, but because we find it dispositive, we will address only the issue of whether the School District is legally responsible for payment of the Youth's education costs.

The Youth Court held that the School District became legally responsible for the Youth's education expenses as a result of the enactment of Chapter 655, Laws of 1985, which amended § 20-7-401, MCA. All parties agree that the Youth Court misquoted the applicable statute. Chapter 655, Laws of

3

1985, amended not § 20-7-401, MCA, but § 20-5-311, MCA, which is the statute covering payment of tuition costs of a high school student who attends school outside his resident school district. Section 20-7-401, MCA, is a definitional statute identifying the various characteristics of special education pupils. The parties had previously agreed that this Youth did not qualify as a special education student. We agree that § 20-5-311, MCA, is the statute at issue in this case.

In pertinent part, § 20-5-311, MCA, provides:

(1) Any child may be enrolled in and attend a high school outside of the high school district in which he resides when such high school is located in Montana or in a county of another state that is adjacent to the state of Montana. When a parent or guardian of a child wishes to have his child attend a school under the provisions of this section, he shall apply to the county superintendent of the county of his residence before July 1 of the school fiscal year for which he seeks approval except in those cases when substantial changes in circumstances occurred subsequently to justify later application. Such application shall be made on a tuition agreement form supplied by the county superintendent. The trustees of the district of residence, the trustees of the district in which the child wishes to attend school, and the county superintendent are the approval agents for tuition to another high school within the county. The county superintendent of the county of residence and the trustees of the district in which the child wishes to attend school are the approval agents for attendance outside the county.

(2) (a)(i) The approval agents shall approve a tuition application when a child lives closer to a high school of another district than any high school located within his resident district or

4

> when, due to road or geographic conditions, it is impractical to attend the high school nearest his residence.
>
> . . .
>
> (b) The approval agents shall approve a tuition application when a child is required to attend high school outside the district of residence as the result of an order of a court of competent jurisdiction. For purposes of this subsection (b), the following do not apply:
>
> (i) the prescribed geographic relationship of the receiving district to the district of residence in this subsection (2)[.]

Thus, looking to those paragraphs relevant in this case, this statute covers different situations. Subsection (1) and (2)(a) cover those situations where a child chooses to attend a school outside his or her resident district while subsection (2)(b) deals with a child required to attend an out-of-district school pursuant to a court order.

Subsections (1) and (2)(a) contain important geographic considerations. Subsection (1) states that a child may attend an out-of-district school when such school is located within this state or in a county of another state that is adjacent to the state of Montana. And subsection (2)(a) requires approval agents to approve a tuition application when a child lives nearer a high school of another district than any resident district high school.

The specific question raised on appeal is what effect the language of subsection (2)(b)(i) has upon the geographic considerations mentioned above. This paragraph was added in 1985 through enactment of Chapter 655, Laws of 1985. The parties disagree whether this amendment now requires approval

agents to approve a tuition application regardless of where a youth is placed.

SRS and Hill County assert that this language mandates that approval agents approve a tuition application when, by valid court order, a child is required to attend high school outside his resident district; it matters not whether a court places the child in a school farther away from his resident district school nor does it matter whether a court places a child outside this state or an adjacent state. The School District disagrees, asserting that the language of (2)(b)(i) affects only the requirement that approval agents determine whether the child lives nearer the out-of-district school than the district school. The School District contends that the language in question does not affect the "adjacent states" doctrine, so that approval agents are not required to approve a tuition application if a child is placed outside this state or an adjacent state. This question is of obvious importance in this case where the child was placed in Minnesota.

A reading of this statute does not plainly convey the intent of the legislature; we find both sides present plausible interpretations of the language in question. We therefore turn to the rules of statutory construction to determine legislative intent.

We first note that subsections (1) and (2) of § 20-5-311, MCA, are interdependent, at least to some degree. Subsection (2) refers to approval agents who are defined only in subsection (1). SRS correctly notes that the two subsections pertain to different situations-- voluntary attendance at an out-of-district school versus attendance at an out-of-district school pursuant to court order. Nevertheless, a reading of the entire statute at least suggests that the two subsections should be read together.

6

Moreover, we find support for the School District's position from related statutes. As noted, § 20-5-311, MCA, covers those situations in which a school district of a child's residence is required to pay tuition if the child attends a high school outside of his resident high school district. Section 20-5-312, MCA, sets forth the method by which the amount of the tuition that the resident school district must pay is determined. In the event the child attends a high school in a county of an adjoining state, the legislature has, through § 20-5-314, MCA, authorized the State Superintendent of Public Instruction to negotiate the amount of tuition. These reciprocal tuition agreements and the authority to execute reciprocal tuition agreements are only with "any state adjoining Montana to allow the eligible children of Montana to attend school in the adjoining state and to allow children of the adjoining state to attend school in Montana." Section 20-5-314, MCA. This statute does not authorize the State Superintendent to enter into a reciprocal tuition agreement with a state not adjoining Montana. The parties have not cited and we have not found any statutory method to calculate the amount of tuition to be paid to a school in another state not adjacent to Montana. In construing legislation, this Court will attempt to harmonize related statutes, giving effect to each. Montana Contractors' Assn., Inc. v. Department of Highways (Mont. 1986), 715 P.2d 1056, 1058, 43 St.Rep. 470, 472; Crist v. Segna (Mont. 1981), 622 P.2d 1028, 1029, 38 St.Rep. 150, 152.

SRS and Hill County, on the other hand, have presented relevant legislative history which they contend convincingly indicates legislative intent in support of their position. Their historical evidence consists of two unsuccessful legislative proposals, which, if passed, would have relieved a local school district from payment of education expenses in

7

cases such as this. The second of these proposals was introduced in 1985 as an attempted amendment to HB 608, the bill which eventually amended § 20-5-311, MCA, by inserting subsection (2)(b). We have carefully considered the arguments presented by these parties, and have concluded that the defeat of a relevant amendment is of uncertain value in interpreting legislation which was passed. As the Oregon Court of Appeals stated in Oregon State Employees Assn. v. Workers' Compensation Department (Or. 1981), 624 P.2d 1078, 1081:

> An amendment to a statute may be defeated for many reasons. The failure of the legislature to pass a particular proposal is of dubious value in interpreting the legislation which was passed.

Finally, SRS relies on a New Jersey case, State in the Interest of F.M. (N.J. 1979), 400 A.2d 576, in support of its argument that the Youth Court has the authority to asses education costs against the School District. In F. M. a Juvenile and Domestic Relations Court ordered an adjudicated delinquent girl to be placed in a private special education institution and ordered the school board of the child's resident district to pay the costs. The school board moved to vacate the order but the New Jersey Superior Court upheld the order.

The Juvenile Court's authority in F.M. to assess education costs against a school district derived from New Jersey statutes which differed from our state statutes. However persuasive the reasoning of a sister jurisdiction, we are bound by the words of our statutes.

Accordingly, we hold that the Youth Court erred in finding the School District legally responsible for this Youth's education costs. We therefore reverse that portion

8

of the lower court's decision holding the School District liable.

_John Conway Harrison_
Justice

We concur:

_S. A. Turnage_
Chief Justice

_Fred J. Weber_

_John C. Sheehy_

_L. C. Gulbrandson_

_William E. Hunt_
Justices