No. 93-363

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

BANKERS LIFE & CASUALTY CO.,

    Petitioner and Appellant,

-v-

LEA PETERSON, LORILI BARNETT,
KRISTI WOLF, DIANE CHAIDEZ and
MONTANA HUMAN RIGHTS COMMISSION,

    Respondents and Respondents.



DEC 2 8 1993

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Judicial District,
In and for the County of Lewis and Clark,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Tom K. Hopgood, Luxan & Murfitt, Helena, Montana

    For Respondent:

        Peter M. Meloy, Meloy Law Firm, Helena, Montana;
David Rusoff, Montana Human Rights Commission,
Helena, Montana

Submitted:  November 30, 1993

Decided:  December 28, 1993

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

In a case of first impression, the issue before this Court is whether an individual major medical expense insurance policy that excludes coverage for normal pregnancy and childbirth violates § 49-2-309, MCA. Unique to Montana, § 49-2-309, MCA, prohibits discrimination based solely on sex in the issuance, operation, coverage, rates or premiums of any type of insurance policy. The First Judicial District Court, Lewis and Clark County, affirmed a determination by the Montana Human Rights Commission (the Commission) that the policy issued by Bankers Life and Casualty Co. (Bankers Life) unlawfully discriminated against female policyholders. We affirm the District Court.

Bankers Life is an insurance company authorized to do business in Montana. Lorili Barnett, Lea Peterson, Kristi Wolf and Diane Chaidez (collectively the Charging Parties), in separate transactions, purchased a "Major Medical Expense Policy" from Bankers Life. The policies contained the following provisions at issue in this case:

> BENEFIT PROVISIONS - We'll pay covered expenses incurred by a family member due to injury, sickness or mental illness.
>
> EXCEPTIONS - This policy does not cover expenses for:
>
> . . .
>
> (13) Normal pregnancy and childbirth. Complications of pregnancy expenses are covered as a sickness.

In conjunction with this policy, Bankers Life offered an optional Maternity Benefits Rider which would provide coverage for normal

pregnancy and childbirth expenses. The Charging Parties did not purchase the Maternity Benefits Rider.

The Charging Parties subsequently gave birth and submitted their normal maternity expenses to Bankers Life; Bankers Life denied coverage for those expenses. Pursuant to § 49-2-309, MCA, each of the Charging Parties filed a complaint with the Commission, alleging unlawful sex discrimination in an insurance policy. The four cases were consolidated and a hearing was held on January 24, 1992. The Commission issued its Findings of Fact, Conclusions of Law and Order on April 17, 1992, determining that Bankers Life had unlawfully discriminated against the Charging Parties by excluding coverage and denying benefits for normal maternity expenses.

Bankers Life petitioned the District Court for judicial review of the Commission's decision on May 8, 1992. The State of Montana, on behalf of the Commission, was granted leave to intervene in the action. After oral argument, the District Court issued its decision and order on May 19, 1993, determining that, because pregnancy occurs only to women, any classification which relies on pregnancy as the determinative criterion is a distinction based on sex. Because Bankers Life's policy excluded benefits for pregnancy and childbirth, the court concluded that the policy unlawfully discriminated against female policyholders in violation of § 49-2-309, MCA.

The parties agree that only issues of law are before this Court. Therefore, our standard of review is whether the District Court's interpretation of the law is correct. Mooney v. Brennan

3

(1993), 257 Mont. 197, 199, 848 P.2d 1020, 1022. Thus, we focus on the District Court's interpretation of § 49-2-309, MCA, in light of the agreed facts. The legal issues before us are whether § 49-2-309, MCA, prohibits discrimination on the basis of pregnancy in a major medical expense insurance policy and, if so, whether the Bankers Life policies at issue violate the statute.

1) Does § 49-2-309, MCA, prohibit discrimination on the basis of pregnancy in a major medical expense insurance policy?

The District Court concluded that discrimination on the basis of pregnancy constitutes discrimination on the basis of sex, relying on Massachusetts Elec. Co. v. Massachusetts Comm'n Against Discrimination (Mass. 1978), 375 N.E.2d 1192, 1198. As a result, the court concluded that § 49-2-309, MCA, prohibits discrimination on the basis of pregnancy. On appeal, Bankers Life contends that this conclusion is erroneous as a matter of law.

This Court has not interpreted § 49-2-309, MCA, since its passage in 1983. The statute, which is sometimes referred to as Montana's "unisex" insurance statute, provides in pertinent part:

> **Discrimination in insurance and retirement plans.** (1) It is an unlawful discriminatory practice for any financial institution or person to discriminate solely on the basis of sex or marital status in the issuance or operation of any type of insurance policy, plan, or coverage or in any pension or retirement plan, program, or coverage, including discrimination in regard to rates or premiums and payments or benefits.

Section 49-2-309, MCA, has no federal or sister-state counterpart. Thus, federal cases and cases from other states interpreting anti-discrimination statutes in different scenarios are not binding on this Court. Indeed, even the Montana cases discussed below

4

involved different sections of the Montana Human Rights Act.

Bankers Life relies on General Electric Co. v. Gilbert (1976), 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343, and its limited progeny, to support the assertion that pregnancy-related distinctions do not constitute sex discrimination. Gilbert held that an employee disability benefit plan which excluded benefits for pregnancy did not unlawfully discriminate on the basis of sex in violation of Title VII of the 1964 Human Rights Act, 42 U.S.C. 2000e-2(a)(1) (Title VII). Gilbert, 420 U.S. at 135, 97 S.Ct. at 407, 50 L.Ed.2d at 353. Although the language in Gilbert appears to support Bankers Life's position, Gilbert is not controlling authority for numerous reasons.

First, the United States Supreme Court's interpretation of the federal statute prohibiting sex discrimination in employment is not binding on this Court's interpretation of Montana's unisex insurance statute. See North v. Bunday (1987), 226 Mont. 247, 254, 735 P.2d 270, 275. Moreover, Congress effectively overruled Gilbert by passing the Pregnancy Discrimination Act, which amended Title VII to specifically include pregnancy as a basis of unlawful discrimination in matters of employment. 42 U.S.C. 2000e(k). Following the passage of the Pregnancy Discrimination Act, the United States Supreme Court stated that Congress had overruled Gilbert and unequivocally held that discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex. Newport News Shipbuilding & Dry Dock Co. v. EEOC (1983), 462 U.S. 669, 684, 103 S.Ct. 2622, 2632, 77 L.Ed.2d 89, 103.

5

Most importantly, like the majority of state courts, this Court refused to follow Gilbert. See Mountain States Telephone v. Comm'r of Labor (1980), 187 Mont. 22, 608 P.2d 1047. As we stated in Mountain States:

> [m]ountain Bell's position fails to take into account the rather checkered history of Gilbert, including the recent significant addition to Title VII demonstrating a contrary congressional intent, and the cases decided after Gilbert, demonstrating a consistent refusal on the part of the majority of the courts to follow Gilbert.

Mountain States, 608 P.2d at 1055. We decline to follow Gilbert in this case and, indeed, consider Montana law sufficient to resolve this issue.

In Mountain States, this Court determined that distinctions based on pregnancy are sex-linked classifications. Although we were primarily concerned with the question of federal preemption of the Montana Maternity Leave Act, §§ 49-2-310 and -311, MCA, we stated that:

> [p]regnancy is a condition unique to women, and the ability to become pregnant is a primary characteristic of the female sex. Thus, any classification which relies on pregnancy as the determinative criterion is a distinction based on sex. . . By definition, [placing pregnancy in a class by itself] discriminates on account of sex; for it is the capacity to become pregnant which primarily differentiates the female from the male.

Mountain States, 608 P.2d at 1056 (citations omitted). Citing Massachusetts Elec., we stated that the exclusion of pregnancy-related disabilities from a comprehensive disability plan constituted sex discrimination in employment. Mountain States, 608 P.2d at 1056.

In 1984, we reaffirmed the principle that differential

treatment of pregnancy is gender-based discrimination because only women can become pregnant. Miller-Wohl Co., Inc. v. Comm'r of Labor (1984), 214 Mont 238, 254, 692 P.2d 1243, 1251. Again, the primary issue in that case was one of federal preemption. However, in Miller-Wohl, we determined that an employer's sick leave policy created a disparate effect on women who became pregnant compared to men who did not. Although the policy was facially neutral, it nonetheless subjected women to job termination on a basis not faced by men. We concluded, therefore, that the policy was gender-based discrimination. Miller-Wohl, 692 P.2d at 1052.

Mountain States and Miller-Wohl established that differential treatment of pregnancy constitutes sex discrimination in Montana. Section 49-2-309, MCA, prohibits sex discrimination in the operation, coverage, pricing and benefits of an insurance policy. We conclude, therefore, that § 49-2-309, MCA, prohibits discrimination based on pregnancy in a major medical expense insurance policy. The plain language of § 49-2-309, MCA, and our previous holdings in Mountain States and Miller-Wohl, amply support our conclusion.

We note, moreover, that the majority of courts considering the issue of whether distinctions based on pregnancy constitute sex discrimination under statutes involving both employment and non-employment situations have reached similar conclusions. For example, in Civil Rights Comm'n v. Travelers Ins. Co. (Colo. 1988), 759 P.2d 1358, an employer provided a comprehensive group medical insurance policy as a benefit to its employees; the policy excluded

7

coverage for medical expenses resulting from normal pregnancy but covered complications arising from pregnancy. The Colorado Supreme Court, en banc, concluded that the policy violated a Colorado statute prohibiting sex discrimination in matters of employment compensation. Travelers, 759 P.2d at 1361. Also, in Kirsh v. State Farm Mut. Auto Ins. Co. (Cal.App. 1991), 284 Cal.Rptr. 260, 266, the California Court of Appeals concluded that an insurance company violated the Unruh Act, which prohibits sex discrimination in all "business establishments," by failing to cover pregnancy-related expenses in an insurance policy. Additionally, in Binghamton Cr. Un. v. Div. of Human Rights (N.Y.App. 1990), 564 N.E.2d 1051, 1054, the New York Court of Appeals determined that a disability insurance policy that excluded benefits for pregnancy and was offered in conjunction with an automobile loan was discriminatory because a woman could not obtain credit on the same terms as a man.

Although the great weight of authority supports the District Court's determination that § 49-2-309, MCA, prohibits discrimination based on pregnancy, Bankers Life argues that the legislature did not intend § 49-2-309, MCA, to encompass pregnancy-related distinctions. It asserts that the 1991 Legislature's failure to pass House Bill 388, which would have added specific language including pregnancy distinctions as sex discrimination to § 49-2-309, MCA, and its enactment of §§ 33-22-1201, MCA, et seq., demonstrate legislative intent that § 49-2-309, MCA, does not include pregnancy-based discrimination. Bankers Life cites no

8

relevant authority or legislative history to support either assertion.

Section 49-2-309, MCA, is clear and unambiguous; it prohibits discrimination based on sex in insurance policies. Thus, no further interpretation is necessary. GBN, Inc. v. Montana Dep't of Revenue (1991), 249 Mont. 261, 265, 815 P.2d 595, 597. In any event, the legislature's failure to enact a proposed amendment is of little value in interpreting legislative intent because an amendment may be defeated for many reasons. In re Matter of W.J.H. (1987), 226 Mont. 479, 484, 736 P.2d 484, 487. Furthermore, §§ 33-22-1201, MCA, et seq., merely authorized the Insurance Commissioner (Commissioner) to issue "limited benefit disability insurance" policies, which are exempt from certain premium taxes. Sections 33-22-1202 and -1205, MCA. Those polices are statutorily required to contain maternity benefits. Section 33-22-1203, MCA. Bankers Life has not demonstrated how the passage of this provision of the insurance code, seven years after the passage of the anti-discrimination statute, reflects any legislative intent regarding the unisex statute.

Bankers Life also argues that, because the unisex statute does not specifically refer to discrimination based on pregnancy, this Court is not free to insert such terms. On that basis, Bankers Life asserts that we are prohibited from concluding that an exclusion for expenses for normal pregnancy and childbirth in a major medical expense policy violates § 49-2-309, MCA.

Section 1-2-101, MCA, which precludes courts from "adding" or

9

"inserting" language into a statute, has no bearing here because we do not add anything to § 49-2-309, MCA, by our decision today. Section 49-2-309, MCA, is clearly intended to cover all discriminations in insurance policies that are based solely on sex. As is usually the case, the legislature declined to enumerate all conceivable varieties of sex discrimination, but rather left the interpretation and application of this general anti-discrimination statute to the courts. Our task is merely to interpret § 49-2-309, MCA, to determine whether distinctions based on normal pregnancy and childbirth constitute discrimination on the basis of sex.

We conclude that discrimination on the basis of pregnancy is discrimination on the basis of sex and is, therefore, prohibited by the Montana unisex insurance statute.

2) Do the major medical expense insurance policies issued by Bankers Life, which exclude expenses for normal pregnancy and childbirth, violate § 49-2-309, MCA?

The District Court concluded that the exclusion of normal pregnancy and childbirth expenses from Bankers Life's policies violated § 49-2-309, MCA, reasoning that pregnancy is a physical condition requiring medical attention and the exclusion of maternity expenses imposes a hardship on women not imposed on men. On appeal, Bankers Life's primary argument is that its policy covers expenses only for "sickness, injury or mental illness" and that a normal pregnancy does not qualify as a sickness or injury. It asserts, therefore, that the policy does not discriminate solely on the basis of sex; rather, it argues that the determinative

10

classification is based on the fact that pregnancy is not a "sickness."

We rejected a similar argument in Mountain States. There, the employer argued that normal pregnancy was not a typically covered "disease or disability" and, therefore, that the Montana Maternity Leave Act's protection for women "disabled because of pregnancy" did not apply to normal pregnancies. This Court disagreed, and affirmed the district court's conclusion that normal pregnancy resulted in an "inability to pursue an occupation because of physical impairment" and thus was covered by the Act. Mountain States, 609 P.2d at 1062. The argument was also rejected in Travelers, where the Colorado Supreme Court stated that pregnancy is a natural incident of adult life requiring medical attention, and the purpose of health insurance is to defray costs of needed medical treatment. Travelers, 759 P.2d at 1364. As stated by the District Court, pregnancy is a physical condition which requires medical attention, regardless of whether it is technically classified as a sickness.

In sum, Bankers Life's major medical insurance policy excludes a significant major medical expense for women, a hardship which is not imposed on men. Thus, while men are--at least on the face of this policy--provided comprehensive coverage for major medical expenses, including male-specific conditions, women are not provided similar protection. See Quaker Oats Co. v. Cedar Rapids Human Rights Comm'n (Iowa 1976), 268 N.W.2d 862, 864 and Massachusetts Elec., 375 N.E.2d at 1198. We conclude that this

disparity of treatment is, on its face, sex discrimination in violation of § 49-2-309, MCA.

Bankers Life also argues that, because its policy is not "comprehensive," Travelers and other cited cases are distinguishable. This distinction is without import. Section 49-2-309, MCA, prohibits gender-based discrimination in all insurance policies. Regardless of whether Bankers Life's policy is technically classified as "comprehensive" or "major medical," discrimination on the basis of sex is proscribed by statute. In any event, if such a distinction exists other than as semantics, Bankers Life failed to make a record upon which either the Commission, the District Court, or this Court could so rule.

As an alternative approach, Bankers Life contends that covering normal pregnancy and childbirth expenses will constitute reverse discrimination against men because men will pay premiums for benefits that only women receive. We disagree.

Rejecting a similar argument, the Colorado Supreme Court stated that:

> [a]lthough the risk of one class may not be precisely the same as the risks of the other class, an insurance policy which provides benefits comprehensively to males and females for medical conditions to which each class is separately subject cannot be deemed to discriminate against either class on the basis of sex.

Travelers, 759 P.2d at 1364. The same holds true here. The only gender specific exclusion in the policy at issue is the pregnancy exclusion; no male gender-specific exclusions are listed. Absent male gender-specific exclusions in Bankers Life's policy, women are paying premiums for benefits only men receive. As noted in Miller-

12

Wohl, treating pregnancy on an equal basis with other medical conditions merely places men and women on more equal terms. Miller-Wohl, 692 P.2d at 1254.

As a final matter, Bankers Life argues that the Montana Commissioner of Insurance is required by § 33-1-502(5), MCA, to review all policies for compliance with § 49-2-309, MCA, and withdraw approval if a policy violates the unisex insurance statute. Bankers Life asserts that, because the Commissioner approved the policies at issue, it is entitled to rely on that approval. This argument is without merit.

First, Bankers Life's policies were approved prior to the passage of § 33-1-502(5), MCA, by the 1991 Legislature; at the time of that approval, the Commissioner had no duty to review the policies for violations of § 49-2-309, MCA. We also note that this argument is somewhat inconsistent with the following provision in Bankers Life's policy:

> Any provision of this policy which, on its effective date, is in conflict with the laws of the state in which you live on that date is amended to conform to the minimum requirement of such laws.

As set forth above, § 49-2-309, MCA, was enacted in 1983. The Charging Parties purchased their Bankers Life policies subsequent to October 1, 1985, while the unisex statute was in full force and effect. Pursuant to the policies themselves, then, the policies were automatically "amended" to conform to the requirements of § 49-2-309, MCA. Even absent such a provision in the policy itself, it is well established that provisions in insurance statutes are to be read into an insurance policy as though written therein. Sagan

13

v. Prudential Ins. Co. (Mont. 1993), 857 P.2d 719, 721, 50 St.Rep. 902, 903.

Bankers Life's policy excludes normal pregnancy and childbirth expenses from coverage, thus entitling women to fewer benefits in a major medical expense insurance policy because of their sex. We conclude that this differential treatment based on sex is discriminatory on its face. Therefore, we hold that the major medical expense insurance policies purchased by the Charging Parties from Bankers Life violate § 49-2-309, MCA, by unlawfully discriminating on the basis of sex.

Affirmed.

_____
                                                      Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
                Justices

14